UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENT ALLEN VANHORN,

    Plaintiff,

v.                                      CASE NO: 8:09-cv-258-T-23EAJ

STATE OF FLORIDA, et al.,

    Defendants.
_____/

## **ORDER**

On August 21, 2008, Kent Allen VanHorn ("VanHorn") filed a "Motion to Return Property and Money per Federal Rules of Criminal Procedure per (Rule 41(g))" (the "motion to return property" [Doc. 1]) seeking (a) an evidentiary hearing to determine whether money and documents allegedly seized by the Drug Enforcement Administration (the "DEA") in the course of a search of VanHorn's residence should be returned to VanHorn, (b) an order directing the DEA to show cause why the seized property should not be returned and to "produce all records, and receipts, pertaining to this case," and (c) an order directing service of the motion on the DEA, the Hillsborough County Sheriff's Office ("HCSO"), and the State of Florida. Also on August 21, 2008, VanHorn filed a "Motion to Suppress per Rule '41'/Rule 12" (the "motion to suppress" [Doc. 2]). Although styled a motion to suppress and reciting Rule 41(h), Federal Rules

of Criminal Procedure,[1] the motion to suppress requests an order directing HCSO to produce all records relating to Hillsborough County Circuit Court case No. 04-022087 and directing the DEA to produce all records relating to DEA case no. "G6-05-0028 in relation to the search that was illegally done on November 19, 2004."[2] On September 29, 2008, HCSO filed "Objections" (Doc. 3) to the motions requesting denial of both motions and dismissal of HCSO as a party. On October 8, 2008, the United States moved (Doc. 4) to strike the motion to return property and the motion to suppress. On November 5, 2008, VanHorn filed a "Motion to Claim per Seizure of U.S. Currency per Claim Through 18 U.S.C. § 983(a)(2)(D)" (Doc. 7), and on November 12, 2008, a "Notice of Supplemental Authority" (Doc. 8). A February 12, 2009, order (Doc. 12) construes the "Motion to Claim per Seizure of U.S. Currency per Claim Through 18 U.S.C. § 983(a)(2)(D)" as a motion to set aside a declaration of forfeiture pursuant to 18 U.S.C. § 983(e) (the "motion to set aside") and the "Notice of Supplemental Authority" as a legal memorandum in support of the motion to set aside. Additionally, the order directs the United States to respond to the motion to set aside and to address (a) whether the DEA notice of seizure and commencement of administrative forfeiture in DEA case no. G6-05-0020 satisfies 19 U.S.C. § 1607(a), 18 U.S.C. § 983, and the requirements of constitutional due process as construed in <u>Jones v. Flowers</u>, 547 U.S.

---

[1] <u>See</u> Fed. R. Crim. P. 41(h) ("A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides.").

[2] Perhaps relying on a November 19, 2005, HCSO "Supplemental Investigation" note (Doc. 1 at 7) attached to his motion, the Motion to Return Property (Doc. 1 at 2) and the Motion to Suppress (Doc. 2 at 4) state that the search occurred on November 19, 2004. However, in the motion to set aside, <u>see</u> Doc. 7 at 1, and in various state-court filings, <u>see</u> Doc. 3-8 at 3; 3-9 at 6, VanHorn states that the search occurred on November 10, 2005.

- 2 -

220 (2006), and (b) the weight if any to accord the unauthenticated documents attached to the United States' motion to strike and the unverified representations in the motion to strike. On February 13, 2009, without actual notice of the specific directions in the February 12, 2009, order, the United States responded (Doc. 12) to the motion to set aside. The response includes a September 29, 2008, declaration (Doc. 12-9) of John Hieronymus, Forfeiture Counsel for the DEA, authenticating documents from the DEA file. On February 20, 2009, the United States filed a supplement (Doc. 13) to the response.

## BACKGROUND

Documents from the Hillsborough County Court records attached to HCSO's objections and the United States' supplemental response disclose that on November 10, 2004, pursuant to a state-court search warrant in case no. 04-108888, HCSO officers (including Detective Todd Schrock [PID 4701], a Corporal Glasscock [PID 0598], and a Detective Baxter [PID 3368]) and DEA agents including Special Agent Mark Embry executed a search of VanHorn's residence, 10701 Canoe Drive, Thonototassa, Florida 33592. Detective Schrock's November 10, 2004, HSCO property receipt (Doc. 3-2 at 3) states that HCSO officers seized (i) 138.9 pounds of marijuana and (ii) a "suitcase with plastic bags." Detective Schrock's November 19, 2004, supplemental report (Doc. 3-2 at 6-7) states that "U.S. currency was located by DEA and was seized by DEA" during the November 10, 2004, search. HCSO states (Doc. 3 at 3) that the property receipt lists all the items seized by HCSO.[3] However, a

---

[3] HCSO also states (Doc. 3 at 4 n.2) that "all listed items in the possession of HCSO for Case
(continued...)

November 10, 2004, "Inventory and Receipt of Property Seized Under the Search Warrant" (Doc. 3-2 at 14) signed by Detective Schrock and attested by Officer Bill Sims (PID 4870) appears to record unspecified "Paperwork" discovered on the living room floor by Officer Glasscock–although the entry may record a return or receipt that law enforcement left at VanHorn's residence.

The Hillsborough County court records further disclose that VanHorn was arrested in case no. 04-CF-02287 on November 23, 2004; posted bond on November 24, 2004;[4] pleaded guilty to "Trafficking in Cannabis (25 to 2000 pounds)" on May 5, 2005; was sentenced to thirty-six months in Florida State prison on October 19, 2005; and, on January 3, 2006, filed a "Motion to Return Property and/or Monies" in state court. The motion (Doc. 3-4) contends that upon arresting VanHorn HCSO seized $20,000 legally earned currency and "Misc. house deeds/papers, etc.," and the motion requests an order directing their return. Following a stay (Doc. 3-5) pending resolution of VanHorn's appeal from the judgment and sentence in the underlying criminal case, on August 22, 2006, Circuit Judge Manuel Lopez ordered (Doc. 3-6) the Office of the

---

(...continued)
Number 04-108888 were destroyed on or about August 28, 2008, pursuant to routine drug/evidence destruction." Additionally, HCSO attaches a property report (Doc. 3-12) recording the destruction on August 7, 2008, of approximately 150 pounds of marijuana and "1 suitcase w/plastic bags" in case no. 04-108888.

[4] Apparently relying on an erroneous or misleading entry in the state-court docket (Doc. 4-6 at 8), the United States initially states (Doc. 4 at 3) that the Hillsborough County court records establish that "[b]ond was posted on January 7, 2005." See also Doc. 12 at 3 ("Bond was posted on January 7, 2005."); Doc. 12 at 10 ("The court records confirm that bond was posted January 7, 2005 . . . ."); Doc. 13 at 8 ("[A]n examination of the criminal docket in the VanHorn case revealed . . . that a surety bond was posted on January 7, 2005."). However, a search of the HCSO records performed at the United States' request disclosed (Doc. 13-5) "no record of Van Horn posting a Surety Bond in January 2005. However, it was determined that Van Horn . . . posted a surety bond . . . on November 24, 2004." See also Doc. 13 at 4; Doc. 13-4 (certified copy of the Hillsborough County Court Docket) at 1, 2, 3, 4, 5, 6, 11, 12 (describing Van Horn's "Bond Out Date" as "24-NOV-2004").

State Attorney to respond to the motion. The State's response (Doc. 3-7; see also Doc. 4-7) reports HCSO's contention that "no member of [HCSO] ever impounded, seized or confiscated any monetary sum that belonged to the defendant" and HCSO's confirmation that "a member of the [DEA] did seize $20,000 from the defendant's home . . . ." VanHorn's reply (Doc. 3-8 [excluding exhibits]) notes the State's failure to address his contention as to "the miscellaneous documents," complains of HCSO's failure to include the money seized by the DEA (and the "the miscellaneous documents") on the "property receipt," and demands the return of the money and documents. On September 17, 2007,[5] an evidentiary hearing was held, at which Detective Schrock testified that (a) Detective Schrock and the DEA jointly executed the search and (b) although Detective Schrock seized the marijuana discovered during the search, the DEA (not HCSO) seized some currency. Accordingly, Judge Lopez orally denied VanHorn's motion "because the Sheriff's office does not have that money" (Doc. 3-9) and advised VanHorn to seek relief in federal court. A January 2, 2008, written order (Doc. 3-10; cf. Doc. 3-3 at 3; Doc. 12-9 at 19) finds that the money "seized from Defendant's home at the time of his arrest is not in the possession of the HCSO or any other State of Florida law enforcement agency," concludes that the Circuit Court lacks jurisdiction to order the money's return, and denies the motion.

The United States' motion, responses, and the Hieronymus declaration disclose (a) that while executing a search warrant at VanHorn's residence on November 10, 2004, the DEA seized as drug proceeds $19,640 in U.S. currency (the "currency");

---

[5] See Doc. 3-9 (Tr. of Proceedings [Sept. 17, 2007]).

(b) that the DEA assigned the currency asset I.D. number 05-DEA-444935 and initiated administrative forfeiture proceedings in DEA case no. G6-05-0020; (c) that, on December 30, 2004, the DEA sent written notice (Doc. 12-9 at 5) of the seizure by certified mail, return receipt requested, to VanHorn at 10701 Canoe Drive, Thonototassa, Florida 33592; (d) that, as evidenced by an attached return receipt (Doc. 12-9 at 6), the United States Postal Service attempted to deliver the notice three times between January 5 and January 19, 2005, and on January 19, 2005, the notice was returned to the DEA stamped "UNCLAIMED."[6] Hieronymus declares (without elaboration) that "[a] subsequent verification of the address was conducted by this office with the DEA office in Miami, FL. The address was confirmed as the current and valid address for Kent Allen VanHorn." Finally, notice of the seizure of the property was published (Doc. 12-9 at 7-9) in The Wall Street Journal once each week for three successive weeks (January 10, 17, and 24, 2005).

The mailed and published notices (1) state that the currency was seized by the DEA for forfeiture pursuant to 21 U.S.C. § 881 because the property was used or acquired as a result of a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq., and that the DEA had commenced administrative forfeiture proceedings pursuant to 18 U.S.C. § 983 and 19 U.S.C. §§ 1602-1619, (2) explain the procedure for filing a claim with the DEA forfeiture counsel to contest the forfeiture action in United States District Court; (3) state that the deadline to file a claim is February 3, 2005 (if

---

[6] "'[U]nclaimed' does not necessarily mean that an address is no longer correct; it may indicate that an intended recipient has simply failed or refused to claim mail." Jones v. Flowers, 547 U.S. 220, 245 (2006) (Thomas, J., dissenting); see also United States Postal Service, Domestic Mail Manual § 507, Exh. 1.4.1, available at http://pe.usps.com/text/dmm300/507.htm) (last visited Mar. 5, 2009).

- 6 -

notice is received by mail) or February 23, 2005 (if mailed notice is not received); and (4) explain the option of filing a petition for remission or mitigation. After the deadline for filing a claim, on March 31, 2005, the DEA forfeited (Doc. 12-9) the property to the United States.

**DISCUSSION**

Federal law provides for the forfeiture of money "traceable" to drug trafficking.[7] The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") governs civil forfeiture actions (both judicial and administrative) initiated after August 23, 2000. See 18 U.S.C. § 983; Pub. L. No. 106-185, 114 Stat. 202, codified in part at 18 U.S.C. § 983; Mesa Valderrama v. United States, 417 F.3d 1189, 1195 (11th Cir. 2005). Property worth $500,000 or less is subject to administrative forfeiture without judicial involvement. See 19 U.S.C. § 1607.[8] To commence an administrative forfeiture action, the government must comply with the notice requirements of 18 U.S.C. § 983 and 19 U.S.C. §§ 1607-1609. The government must send written notice of the seizure and information concerning applicable procedures to claim the seized property to each person who may have an interest in the property.[9] Additionally, notice of the seizure and intention to

---

[7] See 21 U.S.C. § 881(a)(6) ("The following shall be subject to forfeiture to the United States and no property right shall exist in them . . . All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.").

[8] See also United States v. Williams, 130 Fed. Appx. 301, 303 n.2 (11th Cir. 2005) ("Although 19 U.S.C. § 1607 facially applies only to customs seizures, the federal drug laws have incorporated § 1607's procedures for drug-related seizures.") (citing 21 U.S.C. § 881(d)).

[9] See 18 U.S.C. § 983(a)(1)(A)(i) (providing that, with specified exceptions, "in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required
(continued...)

- 7 -

forfeit must be published once a week for at least three successive weeks "in a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought." 21 C.F.R. § 1316.75; see also 19 U.S.C. § 1607(a). A person claiming the property may file a claim "not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure." 18 U.S.C. § 983(a)(2)(B). Upon receipt of a timely claim, the administrative proceedings end and the government may (among other options) seek judicial forfeiture by filing a complaint in federal district court. See 19 U.S.C. § 1608; 18 U.S.C. § 983(a)(3)(A)-(C); 21 C.F.R. § 1316.76(b); 21 C.F.R. § 1316.78. If no timely claim is filed, the government may declare the property forfeited. See 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77. The declaration of forfeiture has "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. § 1609(b).

CAFRA provides that a motion to set aside a declaration of forfeiture under 18 U.S.C. § 983(e) is the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5); see also Valderrama, 417 F.3d at 1195. Review "is limited to determining whether the agency followed the

---

⁹(...continued)
to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."); 18 U.S.C. § 983(a)(1)(A)(iv) ("In a case in which the property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency"); 19 U.S.C. § 1607(a).

proper procedural safeguards." Valderrama, 417 F.3d at 1196.[10]  Under Section 983(e), a claimant is entitled to judicial relief if he received inadequate notice.  Section 983(e) provides:

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if-
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

"Thus, in cases subject to § 983(e), it is clear that the movant must show not only that the government knew or reasonably should have known of his interest in the property yet failed to take reasonable steps to notify him, but also that he did not know or have reason to know of the seizure within sufficient time to file a timely claim."  United States v. Russell, No. 2:04-cr-150-MHT, 2006 WL 2786883, *3 (M.D. Ala. Sept. 27, 2006).  However, even if precluding a claim under CAFRA, notice of a seizure, without more, may be insufficient to satisfy constitutional due process.[11]  If a motion to set aside a

---

[10]  In limited circumstances a federal court may exercise equitable jurisdiction over a civil forfeiture decision.  In re Matter of $67,470.00, 901 F.2d 1540, 1544 (11th Cir. 1990).  "The decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint."  In re Matter of $67,470.00, 901 F.2d at 1544.  Although appropriately exercised to prevent a "manifest injustice," United States v. Eubanks, 169 F.3d 672, 674 (11th Cir. 1999), equitable jurisdiction should not be invoked "to review the merits of a forfeiture matter when the petitioner elected to forego the procedures for pursuing an adequate remedy at law."  In re Matter of $67,470.00, 901 F.2d at 1545.

[11]  See Volpe v. United States, 543 F. Supp. 2d 113, 118-19 (D. Mass. 2008) ("Although Plaintiff does not have a remedy under CAFRA, 'district courts retain the authority to entertain constitutional challenges to administrative forfeitures.'") (citing Gonzalez-Gonzalez v. United States, 257 F.3d 31, 35 (1st Cir. 2001) (involving a pre-CAFRA forfeiture)); Gonzalez-Gonzalez, 257 F.3d at 38. ("[T]he actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture
(continued...)

- 9 -

declaration of forfeiture is granted, the declaration must be set aside "without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party." 18 U.S.C. § 983(e)(2).

Finally, CAFRA's notice requirements should be construed in light of the requirements of due process.[12] Under the Due Process Clauses of the Fifth and Fourteenth Amendments, "individuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard." Valderrama, 417 F3d. at 1196 (citing Dusenbery v. United States, 534 U.S. 161, 167-68 (2002)). "Due process does not require that a property owner receive actual notice before the government may take his property." Jones v. Flowers, 547 U.S. 220, 226 (2006) (citing Dusenbery, 534 at 170). Rather, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Because "'[c]hance alone' brings a person's attention to 'an advertisement in small type inserted in the back pages of a newspaper,'" Jones v. Flowers, 547 U.S. at 237 (quoting

---

(...continued)
proceedings, as opposed to notice-in-fact of seizure."); Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005) ("[I]ndividuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard.").

[12] See United States v. Ritchie, 342 F.3d 903, 910 (9th Cir. 2003) ("The statutory and regulatory guidelines for forfeitures are interpreted in light of constitutional due process concerns regarding notice of impending legal proceedings."); cf. Centeno v. United States, No. 05 Civ. 8794, 2006 WL 2382529, *4 (S.D.N.Y. Aug. 17, 2006) ("CAFRA's requirement that the Government need only take 'reasonable steps to provide' notice mirrors the due process requirement that notice be 'reasonably calculated . . . to apprise a party of the pendency of the [forfeiture] action.'") (quoting Dusenbery v. United States, 534 U.S. 161, 170 (2002).

Mullane, 339 U.S. at 315), "notice by publication is adequate only where 'it is not reasonably possible or practicable to give more adequate warning,'" Flowers, 547 U.S. at 237 (quoting Mullane, 339 U.S. at 317).[13]  Generally, notice is sufficient notice if mailed to an address reasonably believed to be that of the intended recipient.[14]  However, if notice sent by certified mail is returned unclaimed, the government must take "additional reasonable steps" if practicable to provide a property owner with notice. Flowers, 547 U.S. at 235 (addressing due process requirements of notice to the owner of real property before a tax sale).  Such additional steps may include, for example, re-sending a notice by regular mail or posting notice on a front door.  Flowers, 547 U.S. at 234-35; see also Flowers, 547 U.S. at 230 ("[W]hen a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so.") (citing Small v. United States, 136 F.3d 1334, 1337 (D.C. Cir. 1998)).  If practicable, additional steps are required even if at the time of mailing the certified mail was reasonably calculated to provide actual notice.  Flowers, 547 U.S. at 238.  If no reasonable additional steps were practicable, the government "cannot be faulted for doing nothing." Flowers, 547 U.S. at 234.

---

[13] See also Schroeder v. City of New York, 371 U.S. 208, 212-213 (1962) ("The general rule . . . is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable."); Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) ("Mullane held that notice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable.").

[14] See Dusenbery, 534 U.S. at 172 ("[T]he use of the mail addressed to petitioner at the penitentiary was clearly acceptable for much the same reason that [the Court] ha[s] approved mailed notice in the past."); Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.").

No jurisdiction exists to consider VanHorn's challenge to the merits of the forfeiture. However, the motion to set aside also contests the adequacy of notice. VanHorn disputes no fact offered by the United States or HCSO but asserts that the notice by certified mail was insufficient because (Doc. 7 at 1) "[VanHorn] was not at the residence when the notice of service (certified mail) came on Jan. 5, 2008, to Jan. 19, 2008." In short, VanHorn denies actual notice and impliedly contests the reasonableness of the DEA's efforts to provide notice.

The United States fails to address VanHorn's assertion that the DEA seized documents from his residence and submits no evidence (e.g., inventory records that the DEA presumptively possesses[15]) that the DEA seized no documents. As to the currency, the United States argues that VanHorn's motion to set aside should be denied because (1) the DEA's efforts to provide notice were reasonable in the circumstances and (2) "Van Horn knew of the seizure within sufficient time to have filed a timely claim." The United States fails to address the circumstance that casts doubt on whether VanHorn had notice of the DEA's seizure or possession of the currency–the fact that the

---

[15] See 41 C.F.R. § 128-50.101 ("Each bureau shall be responsible for establishing and maintaining inventory records of its seized personal property to ensure that: (a) The date the property seized is recorded; (b) All of the property associated with a case is recorded together under the case name and number; (c) The location of the storage of the property is recorded; (d) A well documented chain of custody is kept; and (e) All information in the inventory records is accurate and current."); see also United States v. Herring, No. CR504-011, 2008 WL 4905533, 2 (S.D. Ga. Nov. 10, 2008) ("Defendant also alleges that, during his arrest, officers seized three watches and two gold rings. In response, the Government claims that the DEA did not seize any property other than the $9,500. However, the Government must provide some documentation to support its contention, such as a verified inventory of the items seized pursuant to the warrant.") (citing United States v. Potes Ramirez, 260 F.3d 1310, 1314 (11th Cir. 2004)); cf. Sanchez-Butriago v. United States, Nos. 00 Civ. 8820(JFK), 89 CR. 644-2(JFK), 2003 WL 21649431, at *5 (S.D.N.Y. July 14, 2003) (DEA form identifying property, providing date of seizure, listing case name and number to which property related, storage location of property, and chain of custody sufficed to support Government assertion of proper handling in accordance with applicable regulations).

search was conducted jointly by local law enforcement and the DEA pursuant to a state court search warrant. VanHorn states that he was not present during the search,[16] and VanHorn's attempt to recover the currency in state court from local law enforcement permits the inference that VanHorn initially had no actual knowledge that the DEA had seized the currency. However, VanHorn's statement (Doc. 1 at 2) that "[t]he DEA [agent] who did the search and seizure never gave [VanHorn] any kind of receipt for the money ($20,000) <u>even though he requested one</u>" (emphasis added) renders the inference doubtful. Further, the United States offers no evidence or argument to show when VanHorn obtained actual or constructive notice (<u>e.g.</u>, through access to Detective Schrock's November 19, 2004, supplemental report in the state-court criminal proceeding, <u>see</u> Doc. 7 at 3) of the <u>DEA</u> seizure or possession of the currency.[17] In short, the record contains only ambiguous evidence regarding VanHorn's constructive knowledge of the DEA seizure "within sufficient time to file a timely claim," 18 U.S.C. § 983(e)(1)(B), and even the parties' contentions on this point are unclear.

The United States asserts plausibly that the "additional steps" required by <u>Jones v. Flowers</u>, 547 U.S. 220 (2006), were greater in the circumstances of that case (which involved a tax sale without actual notice by a homeowner who lived elsewhere) than in an administrative forfeiture action in which a claimant knows or should know of a

---

[16] <u>See</u> Doc. 3-8 at 3 (VanHorn's reply to HCSO's response to VanHOrn's January 3, 2006, "Motion to Return Property and/or Monies") ("The defendant [VanHorn] was not present at the time and day the HCSO searched his home.").

[17] <u>Compare</u> <u>Bermudez v. City of New York Police Dept</u>., No. 07-cv-9537(HB), 2008 WL 3397919, *2 (S.D.N.Y. Aug. 11, 2008) (granting motion to set aside forfeiture in part because "[a]lthough Plaintiff was under the impression that his money had been seized by the NYPD, he had absolutely no reason to believe that his money had been seized by the federal government.").

seizure of his property by law enforcement and notice is initially sent by certified mail to the claimant's actual residence. However, the United States does not elaborate the difference or address dicta in Flowers suggesting that the required "additional steps" must account not only for the possibility that (as in Flowers) an unclaimed letter was delivered to an address at which the property owner did not reside but also "that he had simply not retrieved the certified letter," Flowers, 547 U.S. at 235. Instead, the United States argues that (a) the DEA's efforts "met the standards of reasonableness as they were interpreted in 2004 when the VanHorn seizure took place" (which, even if correct,[18] appears irrelevant to a motion to set aside under Section 983(e)) and (b) the DEA's "additional steps" satisfy Flowers. If notice sent by certified mail is returned unclaimed, Flowers requires "additional reasonable steps" if practicable, which steps may include, for example, re-sending a notice by regular mail or posting notice on a front door. Flowers, 547 U.S. at 234-35. The United States emphasizes the undisputed facts that (i) even if temporarily absent, VanHorn resided at the address to which the DEA sent the initial notice and (ii) whether or not his location was known to the DEA and whether or not the DEA even inquired into the matter,[19] VanHorn was not incarcerated when the

---

[18] See Jones v. Flowers, 547 U.S. 220, 228 n.1 (2006) ("Most Courts of Appeals have . . . concluded that the Due Process Clause of the Fifth Amendment requires the Federal Government to take further reasonable steps [either at the outset or as a follow-up measure if initial mailed notice is ineffective] in the property forfeiture context.") (collecting cases); United States v. Ritchie, 342 F.3d 903, 910-911 (9th Cir. 2003) ("Since our decision in [United States v. Clagett, 3 F.3d 1355 (9th Cir.1993)], all other circuits to consider the issue have required the government to make reasonable additional efforts to provide personal notice once it has learned that an initial effort has failed.") (collecting cases).

[19] The United States asserts (Doc. 13 at 8) that "an examination of the criminal docket in the VanHorn case revealed only that Kent Allen VanHorn was arrested in or about November 24, 2004, and that a surety bond was posted on January 7, 2005." However, apart from the factual error as to the date VanHorn secured his release, see supra, note 3, the United States concedes in a footnote that the Hieronymus declaration "does not specifically state that this inquiry was [ever] made." In fact, the
(continued...)

United States Postal Service attempted to deliver the notice. However, the United States apparently concedes that, after the initial notice was returned unclaimed, the only further step the DEA took was an attempt (successful, but not followed by further action) to verify VanHorn's address by consulting the DEA's Miami office. Although the United States fails to address what other steps were readily available to the DEA, others existed. Most obviously, the DEA could, as Flowers suggests, have re-sent the notice to VanHorn's (now confirmed) address by regular mail or posted the notice on VanHorn's door. In short, the DEA's attempts at notice following the return of the unclaimed notice–at least as reflected in the undisputed facts of this record–appear insufficient under Flowers. However, both parties shall have an opportunity to submit additional evidence.

## CONCLUSION

The United States' motion to strike (Doc. 4) is **DENIED**. VanHorn's motion to return property (Doc. 1) and motion to suppress (Doc. 2) are **DENIED** as follows. To the extent that the motion to return property and the motion to set aside (Doc. 7) challenge the merits of the administrative forfeiture (e.g., by arguing that the forfeited currency was legally earned and had no relation to drug trafficking) the motions are **DENIED** because the court lacks jurisdiction to decide the issue. To the extent that the motion to return property seeks relief under Rule 41(g), Federal Rules of Criminal Procedure, the motion is **DENIED** because Rule 41(g) is unavailable to recover property

---

[19](...continued)
Hieronymus declaration does not even distantly allude to a DEA inquiry as to when VanHorn was released.

forfeited under a civil forfeiture statute.[20] To the extent that the motion to return property seeks relief against HCSO and the State of Florida, the motion is **DENIED** because (a) relief under Rule 41(g) is unavailable as a remedy to recover property allegedly in HCSO's possession[21] and (b) VanHorn has (or had) an adequate remedy in state court to recover any property in HCSO's possession.[22] To the extent that the motion to suppress requests an order directing HCSO to produce all records relating to Hillsborough County Circuit Court case No. 04-022087, the motion is **DENIED AS MOOT**. The Hillsborough County Sheriff's Office and the State of Florida are **DISMISSED** as parties to this action. To the extent that the motion to return property and the motion to suppress request an order directing the DEA to "produce all records, and receipts, pertaining to this case," the motion is **DENIED WITHOUT PREJUDICE**. If the United States refuses following a proper request under Rule 34, Federal Rules of Civil Procedure, to provide relevant documents not privileged or otherwise protected

---

[20] United States v. Artis, 172 Fed. Appx. 309, 311 (11th Cir. 2006) (citing United States v. Watkins, 120 F.3d 254, 255 (11th Cir. 1997)); United States v. Eubanks, 169 F.3d 672, 674 (11th Cir. 1999) ("A [Rule 41(g) ] motion is unavailable . . . when property is retained pursuant to civil forfeiture instead of for use as evidence."); see also United States v. Barnhardt, No. 04-cr-0132, 2006 WL 2474224, 2 (D.D.C. Aug. 25, 2006) (Rule 41(g) "does not encompass property the government already has forfeited through administrative procedures."); Turner v. Gonzales, 2007 WL 1302126, at * 1 (7th Cir. 2007) ("Rule 41(g) is a vehicle for recovering seized but not forfeited property."); United States v. Wilson, 495 F. Supp. 2d 144, 146 (D. Me. 2007) ("Once the property has been forfeited through administrative procedures . . . a Rule 41(g) motion is not the proper procedural vehicle under which to move for its return.").

[21] See United States v. Marshall, 338 F.3d 990, 995 (9th Cir. 2003) ("[T]he government cannot be forced to return property that it never possessed."); United States v. Solis, 108 F.3d 722, 722-23 (7th Cir.1997); United States v. Copeman, 458 F.3d 1070, 1072 (10th Cir. 2006) ("[P]roperty seized and held by state law-enforcement officers is not in the constructive possession of the United States for Rule 41(g) purposes unless it is being held for potential use as evidence in a federal prosecution.").

[22] See Copeman, 458 F.3d 1070 at 1073 ("When "state avenues of relief [are] open to [the movant], he cannot show an inadequate remedy at law.") (quoting Clymore v. United States, 164 F.3d 569, 571 (10th Cir. 1999) (holding that (Rule 41(g) is not available to challenge state judicial-forfeiture proceedings because they provide an adequate remedy).

from disclosure, VanHorn may file a motion to compel under Rule 37(a). Finally, a hearing on the motion to set aside is set for **May 19, 2009, at 10:00 a.m.**, before the undersigned judge in Courtroom 15A, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida. On or before **May 1, 2009**, the parties shall submit (1) any additional evidentiary material (e.g, documentary evidence or affidavits) supporting or opposing the motion to set aside and (2) a list of witnesses and exhibits to be offered into evidence (if any) at the hearing. The plaintiff is urged to consider retaining an attorney in this matter.

ORDERED in Tampa, Florida, on March 9, 2009.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE