UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


KENT ALLEN VANHORN,

      Plaintiff,

v.                              CASE No. 8:09-cv-258-T-23EAJ

D.E.A.,

      Defendant.

_____/


## ORDER

    Pursuant to 18 U.S.C. § 983(e), the <u>pro se</u> plaintiff, Kent Allen VanHorn, moves

(Doc. 9) to set aside a March 31, 2005, declaration of forfeiture to the United States of

$19,460.00 in U.S. currency seized from VanHorn's home by agents of the Drug

Enforcement Administration.  The United States responds (Docs. 12 & 13) in

opposition, and both parties submitted evidence and examined witnesses at a May 19,

2009, evidentiary hearing.

## BACKGROUND

    Acting on information obtained from a cooperating defendant and confirmed by

independent investigation, on November 10, 2004, at approximately 1:00 p.m., DEA

agents of the Tampa District Office arrived at 10701 Canoe Drive, Thonotosassa,

Florida, 33592, the location of a two bedroom, single-wide mobile home (the "trailer"),

which VanHorn describes as his "only residence" and his residence for about twenty

years.  After questioning VanHorn's son and thereby obtaining VanHorn's cellular

telephone number, Special Agent Mark Webb briefly[1] spoke by telephone with VanHorn. Special Agent Webb (a) informed VanHorn that Special Agent Webb (along with other law enforcement officials) was outside VanHorn's home and (b) asked VanHorn to return immediately. Special Agent Dan McCaffrey recalled that, during the call, Special Agent Webb (who was standing approximately two feet away from Special Agent McCaffrey) stated, "'We are at your residence . . . we are the DEA, we're the police, please come to your residence.'" Although VanHorn's testimony appears inconsistent on the point, VanHorn admitted that, during the call, VanHorn learned that DEA agents were at the trailer.[2] Following the abrupt end of the call, Special Agent Webb repeatedly but unsuccessfully attempted to reach VanHorn at the same telephone number. Despite Special Agent Webb's request, VanHorn failed to return home during November 10, 2009.

Soon, about 1:00 or 2:00 p.m., Deputy Todd Schrock of the Hillsborough County Sherif's Office ("HCSO"), who had arrived after the DEA agents, departed the scene to seek a search warrant for the trailer. The DEA agents remained. VanHorn telephoned his mother and asked her to go to the trailer and assume custody of VanHorn's son.

---

[1] Shortly before the call abruptly ended, VanHorn told Special Agent Webb that the battery for VanHorn's cellular telephone was "going dead."

[2] VanHorn testified, "I did not find out that DEA was involved with this. DEA called me on the phone. I did know they were involved. They were at my house. I knew what was going on at the time. [However,] [l]ike I say, I did not find out–like I said I knew it was a Hillsborough County search warrant so I believed everything that was taken was taken by Hillsborough County."). However, on this point, VanHorn appeared to give contradictory testimony as well. "Q: 'You heard first of all agent McCaffrey who spoke about a telephone call and you also read an affidavit that was–agent Webb's affidavit concerning the fact that they had called you on that November 10th date?' A: 'Yes, I confirmed they did and they offered–they said they were law enforcement, not DEA . . . .'"); cf. May 4, 2009, affidavit of Special Agent Mark Webb ¶ 4 ("I informed VanHorn that I was a police officer . . . . I told VanHorn that we (the police) needed VanHorn to return to his residence immediately . . . .").

VanHorn's mother arrived about thirty minutes after Special Agent Webb's conversation with VanHorn and departed with the son.

About six hours later, at approximately 7:00 p.m., Deputy Schrock returned with a search warrant signed by the Honorable Ralph Stoddard of the Circuit Court for Hillsborough County. The DEA agents, Deputy Schrock, and other HCSO officers jointly executed the search warrant. A search of the master bedroom disclosed a large quantity of marijuana and a bag of U.S. currency.

Because (as Special Agent McCaffrey testified) the quantity of marijuana discovered in the bedroom (along with a smaller amount found in a freezer in the kitchen) "was below our threshold," "[t]he deputies at the Hillsborough County Sheriff's Office agreed to seize the marijuana and have it tested here in Florida. [The DEA] seized administratively the money."

Special Agent McCaffrey further testified (1) that DEA Group Supervisor Nicki Hollman completed a DEA Form 12 ("Receipt for Cash or Other Items") describing the items seized by the DEA and (2) that, just before departing the trailer and securing the door, the agents placed a copy of the receipt on the coffee table and next to the search warrant.[3] The Form 12, signed by Hollman and witnessed by Special Agent Embrey, lists "1 Bag U.S. Currency sealed for official count," "1 Ohaus Scale," and "3 bags Misc Documents."[4] As to the "3 bags Misc Documents," Special Agent McCaffrey stated

---

[3] Special Agent McCaffrey's recollection of executing the warrant on November 10, 2004, was especially vivid because this was his first case as a DEA agent.

[4] The Form 12 appears to describe the property searched as belonging to "Kenneth Van Horn" (rather than Kent VanHorn), lists the street address as 10701 "Canoe Lane" (rather than Canoe Drive),

(continued...)

that, based on a brief examination of a few of the documents, he believed the documents consisted of "pieces of junk mail that had [VanHorn's] name and address on there to verify he lived there."[5]

Deputy Schrock testified that he completed a receipt enumerating the items seized by the HCSO Officers, left a copy of the receipt on a coffee table along with the search warrant, and filed the receipt as part of his official report. The receipt (USA Ex. 5 at 14 ["Inventory and Receipt of Property Seized Under the Within Search Warrant"]) enumerates the seized items as (i) "Several Bags\Boxes Marijuana" found in the "South Bedroom Master" by Deputy Schrock, (ii) a "Bag of Marijuana" found in a "Refrigerator (Freezer)" by Corporal Lisa Glasscock, and (iii) "Paperwork (Matthew)" found on a "Living Room Floor" by Corporal Glasscock.

Additionally, Deputy Schrock's November 10, 2004, HSCO "Property receipt" (USA Ex. 5 at 3) states that HCSO officers seized 138.9 pounds of marijuana and a "suitcase with plastic bags," Deputy Schrock's November 10, 2004, incident report (USA Ex. 5 at 2) names "S.A. Mark Embry (DEA)" and refers (as do other parts of the report) for elaboration to a supplemental report. Deputy Schrock's November 19, 2004, supplemental report (USA Ex. 5 at 6-7) describes the events of November 10, 2009, in detail. The report states that Deputy Schrock responded to the scene to

---

[4](...continued)
and contains a street number of which one digit is not perfectly legible.

[5] According to Special Agent McCaffrey's November 15, 2004, report (USA Ex. 6), "non-drug document documentary evidence that was seized from the residence and documented on the DEA 12 by S/A Embrey [meaning, presumably, the '3 bags Misc Documents'] will be transferred to TFA Delia of the St. Louis Field Division for evaluation."

assist "DEA Special Agent Mark Embry"; describes Special Agent Embrey's account to Deputy Schrock of the origin of the DEA investigation; notes that DEA agents remained on the scene while Deputy Schrock sought the search warrant; narrates the DEA agents' part in executing the search; reports that "U.S. currency was located by DEA and was seized by DEA"; and directs the reader, "For more information regarding this case see DEA case number G6-05-0028." Finally, Corporal Glasscock's November 10, 2004, report (USA Ex. 5 at 4-5), after describing the search and related matters, directs the reader, "For additional information refer to main report by Deputy Schrock and the DEA."

On November 23, 2004, VanHorn surrendered to arrest in Hillsborough County case no. 04-CF-02287. On November 24, 2004, VanHorn posted bond and was released from custody. VanHorn claims that, from the morning of November 10, 2009, until his release on bond, he never returned to his trailer, not even to check his mail.[6] VanHorn further claims that, upon his release and return home, VanHorn observed the effects of the search in and around the trailer and discovered the absence of the currency. Within a week of the discovery VanHorn (when retaining an attorney to represent him in the state court criminal proceeding) consulted his attorney about obtaining the return of the currency. Although VanHorn admits consulting his attorney about the currency, he explains his failure to initiate a legal effort by saying, "I'm ignorant of the law. I thought I had to be convicted before [the currency] could be

---

[6] Although stating that during this two-week interval he stayed with a girlfriend, VanHorn offered no explanation for his failure to return home for two weeks after Special Agent Webb's telephone call and summons.

forfeited." Asked about his failure to act before October 19, 2005, to obtain the return of the currency, VanHorn stated, "I hired an attorney. . . . My attorney should have [done] this on my behalf." Again, when asked whether he "first started worrying about getting [the] money back" after October 19, 2005, VanHorn replied, "Yes, ma'am. I had access to a law library and law clerks and people to help me with this. And that's when I said . . . I am entitled to this. This is my right to do this."

VanHorn testified that, about three or four days following his release on bond, he discovered the search warrant (unaccompanied by a property receipt, state or federal), not on a coffee table but "shoved in my couch."

Additionally, VanHorn testified (a) that his attorney in the state court criminal case filed a discovery request on February 3, 2005,[7] and (b) that a February 21, 2005, letter from his attorney (received by VanHorn about February 24 or 25, 2005) contained the requested discovery (or information containing its substance) and included information about the DEA's seizure of the currency. Before then, VanHorn testified, "I didn't receive discovery and find out about [the] DEA having the money . . . ."[8] Although testifying that he did not "find out about [the] DEA having the money until I got a [February 21, 2005] letter from my attorney," VanHorn also testified

---

[7] The state court docket (VanHorn Ex. 2) includes for February 3, 2005, in Hillsborough County Circuit Court case No. 04-022087 a "Notice of Appearance by Atty: Written Plea of Not Guilty and Notice of Discovery - by John J. Cullaro (BD)." However, the docket includes (1) a January 3, 2005, "Notice of Discovery," (2) a January 11, 2005, "Notice of Discovery," and (3) a January 3, 2005, "Notice of Appearance by Thomas F. Granahan."

[8] VanHorn did not address whether the discovery included Deputy Schrock's November 19, 2004, supplemental report (which describes the role of the DEA agents in detail and refers the reader for more information to the DEA) or Corporal Glasscock's November 10, 2004, report (which refers the reader for more information to the DEA).

that he was unaware that the DEA (rather than HCSO) had custody of the currency until a September 17, 2007, evidentiary hearing in state court.[9]

Following the November 10, 2004, seizure of the currency, the DEA initiated administrative forfeiture proceedings in DEA case no. G6-05-0020. On December 30, 2004, the DEA sent written notice of the seizure by certified mail, return receipt requested, to VanHorn at 10701 Canoe Drive, Thonotosassa, Florida 33592. At that time and at all pertinent times following his release on bond, VanHorn resided at the trailer and routinely checked his mail (which included important information about his state court criminal case), although often absent during the work day.

Billy Ray Edwards, postmaster of Thonotosassa, testified at length about (1) U.S. Postal Service procedures for handling certified mail, return receipt requested ("certified mail"), and (2) the route and postal carrier covering VanHorn's residence at the pertinent time. The route was handled by Martha Worth, an able, experienced, "exceptional" carrier familiar with the route. Upon arrival at the pertinent address, a carrier delivering certified mail ("accountable mail," for which the carrier signs when withdrawing and returning each item, and which is segregated from other mail) sounds the horn (or, less often on a rural route, dismounts and knocks on the door). If the customer fails to respond, the carrier completes a U.S. Postal Service Form 3849 ("Delivery Notice/Reminder/Receipt") and deposits a copy of the completed form in the customer's mailbox. The completed form (a) states that the carrier attempted on the

---

[9] But see Doc. 3-7 (October 2, 2006 response by the State of Florida asserting that, according to HCSO, "a member of the [DEA] did seize $20,000 from the defendant's home . . . ." and attached certificate of service on VanHorn); Doc. 3-8 (VanHorn's reply noting that "[i]n the State's response, the State confirms that the Drug Enforcement Agency did seize $20,000 from the defendant's home . . . .").

pertinent date to deliver certified mail to the addressee, (b) names the sender of the certified mail, (c) notes that the customer can retrieve the certified mail at the post office after a specified time, and (d) states that the customer (or his agent) "must be present at time of delivery to sign" for the certified mail. Upon return to the post office, the carrier notes the date of attempted delivery. Five days later, if the customer has not retrieved the certified mail, a second delivery notice is deposited in the customer's mailbox. After fifteen days, the certified mail is returned to the sender.

A U.S. Postal Service receipt (USA Ex. 2) for certified mail sent by the DEA forfeiture counsel and addressed to VanHorn at 10701 Canoe Drive, Thonotosassa, Florida 33592 (as interpreted by Edwards), records that (a) on January 4 or 5, 2005, Worth unsuccessfully attempted delivery and left an initial notice; (b) on January 10, 2005, a second notice was left at VanHorn's address, and (c) on January 19, 2005, the certified mail was returned to the sender after being stamped "unclaimed." VanHorn denies actual receipt of the notices.

Finally, although agreeing that four other streets "in the area" contained homes with an address number 10701 (such parallel numbers being "a common occurrence throughout Hillsborough County"), Edwards repeatedly opined that, owing to the special procedures for handling certified mail and owing to Worth's intimate knowledge of both her route and her customers ("[S]he knows everybody by name"), delivery of the certified mail or the Form 3849s to an address other than VanHorn's was improbable.

Notice of the seizure of the currency was published in <u>The Wall Street Journal</u> once each week for three successive weeks (January 10, 17, and 24, 2005). VanHorn denies reading the <u>Wall Street Journal</u>.

Each mailed and published DEA notice (1) states that the currency was seized by the DEA for forfeiture pursuant to 21 U.S.C. § 881 because the property was used or acquired as a result of a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq., and that the DEA had commenced administrative forfeiture proceedings pursuant to 18 U.S.C. § 983 and 19 U.S.C. §§ 1602-1619, (2) explains the procedure for filing a claim with the DEA forfeiture counsel to contest the forfeiture action in United States district court; (3) states that the deadline to file a claim is February 3, 2005 (if notice is received by mail) or February 23, 2005 (if mailed notice is not received); and (4) explains the option of filing a petition for remission or mitigation.

Vicky Cernak, a records examiner employed by a DEA contractor (Forfeit Support Associates) testified that, as evidenced in part by a DEA Form 527A ("Request for Field Information – Notice Issue" [USA Ex. 8 at 1]), on February 28, 2005, (a) Ms. Cernak received a DEA request to confirm VanHorn's address because a forfeiture "[n]otice was returned with the notation 'unclaimed,'" and (b) Ms. Cernak searched two standard databases ("Choicepoint" and "DAVID" [Driver and Vehicle Identification Database]), confirmed the address, and reported that "there is no other address available." A March 24, 2005, Form 527A (USA Exhibit 8 at 2) repeats the February 28, 2005, request to confirm VanHorn's address and adds, "Per file deficiency please confirm if Kent VanHorn was arrested at all," an instruction resulting

(as Ms. Cernak opined or speculated) from the DEA's wish to know whether or not VanHorn was incarcerated.  In response, Ms. Cernak repeated the information she had provided in response to the DEA's February 28, 2005, request and (after consulting the "Hillsborough County's arrest website") added that "VanHorn turned himself in on 11/23/2004 and was arrested.  He was then released on 11/24/04 on bond to the same address as listed on SSF [meaning, presumably, the Standard Seizure Form]."

The DEA made no further effort to notify VanHorn of the seizure or the forfeiture proceeding.  On March 31, 2005 (USA Ex. 3), the DEA forfeited the currency to the United States.

On May 5, 2005, VanHorn pleaded guilty to "Trafficking in Cannabis (25 to 2000 pounds)."  On May 10, 2005, in an effort to obtain a reduced sentence, and following a discussion with Deputy Schrock, VanHorn agreed to become a cooperating defendant. Deputy Schrock ordinarily informs a defendant who wishes to become a cooperating defendant that, as a result of a plea and agreement to become a cooperating defendant, items seized by the police during an investigation will be forfeited, and Deputy Schrock so informed VanHorn.  However, Deputy Schrock could not recall whether the currency seized by the DEA was discussed in his May 10, 2005, conversation with VanHorn.

On October 19, 2005, VanHorn was sentenced to thirty-six months in Florida prison.  While serving his sentence, VanHorn "tried to get [the currency] back from the State of Florida because [he] believed the State of Florida had it."  On January 3,

2006, VanHorn filed a "Motion to Return Property and/or Monies" in state court. The motion (Doc. 3-4) contends that upon arresting VanHorn HCSO seized $20,000 and "Misc. house deeds/papers, etc.," and the motion requests an order directing their return. Following a stay (Doc. 3-5) pending resolution of VanHorn's appeal from the judgment and sentence in the criminal case, on August 22, 2006, Circuit Judge Manuel Lopez ordered (Doc. 3-6) the State Attorney to respond to the motion. The State's response (Doc. 3-7; see also Doc. 4-7) reports HCSO's contention that "no member of [HCSO] ever impounded, seized or confiscated any monetary sum that belonged to the defendant" and HCSO's confirmation that "a member of the [DEA] did seize $20,000 from the defendant's home . . . ." VanHorn's reply (Doc. 3-8) complains of HCSO's failure to include the money seized by the DEA on the "property receipt," and demands the return of the money and documents. On September 17, 2007,[10] an evidentiary hearing was held, at which Deputy Schrock testified that (a) Deputy Schrock and the DEA jointly executed the search and (b) although Deputy Schrock seized the marijuana discovered during the search, the DEA (not HCSO) seized some currency. Accordingly, Judge Lopez orally denied VanHorn's motion "because the Sheriff's office does not have that money" (Doc. 3-9) and advised VanHorn to seek relief in federal court. A January 2, 2008, written order (Doc. 3-10; cf. Doc. 3-3 at 3; Doc. 12-9 at 19) finds that the money "seized from Defendant's home at the time of his arrest is not in the possession of the HCSO or any other State of Florida law

---

[10] See Doc. 3-9 (Tr. of Proceedings [Sept. 17, 2007]).

enforcement agency," concludes that the Circuit Court lacks jurisdiction to order the money's return, and denies the motion.

On August 21, 2008, VanHorn filed in this court a "Motion to Return Property and Money per Federal Rules of Criminal Procedure per (Rule 41(g))" (the "motion to return property") seeking (a) an evidentiary hearing to determine whether the currency and documents seized by the DEA should be returned to VanHorn, (b) an order directing the DEA to show cause why the seized property should not be returned and to "produce all records, and receipts, pertaining to this case," and (c) an order directing service of the motion on the DEA, the Hillsborough County Sheriff's Office, and the State of Florida. Also on August 21, 2008, VanHorn filed a "Motion to Suppress per Rule '41'/Rule 12" (the "motion to suppress" [Doc. 2]). Although styled a motion to suppress and reciting Rule 41(h), Federal Rules of Criminal Procedure,[11] the motion to suppress requests an order directing HCSO to produce all records relating to Hillsborough County Circuit Court case No. 04-022087 and directing the DEA to produce all records relating to DEA case no. G6-05-0028. On September 29, 2008, HCSO filed "Objections" to the motions requesting denial of both motions and dismissal of HCSO as a party. On October 8, 2008, the United States moved to strike the motion to return property and the motion to suppress. On November 5, 2008, VanHorn filed a "Motion to Claim per Seizure of U.S. Currency per Claim Through 18

---

[11] See Fed. R. Crim. P. 41(h) ("A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides.").

U.S.C. § 983(a)(2)(D)" (Doc. 7), and on November 12, 2008, a "Notice of Supplemental Authority" (Doc. 8).

A February 12, 2009, order (Doc. 12) construes the "Motion to Claim per Seizure of U.S. Currency per Claim Through 18 U.S.C. § 983(a)(2)(D)" (the "motion to set aside") as a motion to set aside a declaration of forfeiture pursuant to 18 U.S.C. § 983(e) and the "Notice of Supplemental Authority" as a legal memorandum in support of the "motion to set aside." Additionally, the order directs the United States to respond to the "motion to set aside" and to address whether the DEA notice of seizure and commencement of administrative forfeiture satisfies 19 U.S.C. § 1607(a), 18 U.S.C. § 983, and the requirements of constitutional due process as construed in Jones v. Flowers, 547 U.S. 220 (2006). The order further directs VanHorn, on or before February 25, 2009, to pay the applicable filing fee or file a properly supported motion to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a).[12]

Following the United States' response (Docs. 12 & 13) to the "motion to set aside," a March 9, 2009, order (Doc. 15) notes the inadequacy of the record to resolve the plaintiff's "motion to set aside," sets an evidentiary hearing for May 19, 2009, and directs the parties to submit any additional evidentiary material supporting or opposing the "motion to set aside." Additionally, the March 9, 2009, order denies the United States' motion to strike, denies VanHorn's motion to return property and motion to

_____

[12] On April 21, 2009, the United States Magistrate Judge denied without prejudice (Doc. 18) VanHorn's motions to proceed in forma pauperis and directed VanHorn, on or before May 1, 2009, to (a) file a renewed motion to proceed in forma pauperis containing complete financial information or (b) pay the filing fee. The order warns that failure to comply will result in a recommendation of dismissal without prejudice. Although the plaintiff states that he submitted the requested materials, the docket discloses no renewed motion to proceed in forma pauperis.

suppress, and dismisses the Hillsborough County Sheriff's Office and the State of Florida as parties to this action. Although denying without prejudice VanHorn's request for an order directing the DEA to "produce all records, and receipts, pertaining to this case," that order states that, if the United States refuses following a proper request under Rule 34, Federal Rules of Civil Procedure, to provide relevant documents not privileged or otherwise protected from disclosure, VanHorn may file a motion to compel under Rule 37(a). The docket discloses no motion to compel. Following the denial of the plaintiff's request for a continuance, on May 19, 2009, a hearing was held at which both parties had the opportunity to examine witnesses, introduce evidence, and present argument.

### DISCUSSION

Federal law provides for the forfeiture of money "traceable" to drug trafficking.[13] The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") governs civil forfeiture actions (both judicial and administrative) initiated after August 23, 2000. See 18 U.S.C. § 983; Pub. L. No. 106-185, 114 Stat. 202, codified in part at 18 U.S.C. § 983; Mesa Valderrama v. United States, 417 F.3d 1189, 1195 (11th Cir. 2005). Property worth $500,000 or less is subject to administrative forfeiture without judicial

---

[13] See 21 U.S.C. § 881(a)(6) ("The following shall be subject to forfeiture to the United States and no property right shall exist in them . . . All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.").

involvement.  See 19 U.S.C. § 1607.[14]  To commence an administrative forfeiture

action, the government must comply with the notice requirements of 18 U.S.C. § 983

and 19 U.S.C. §§ 1607-1609.  The government must send written notice of the seizure

and information concerning applicable procedures to claim the seized property to each

person who may have an interest in the property.[15]  Additionally, notice of the seizure

and intention to forfeit must be published once a week for at least three successive

weeks "in a newspaper of general circulation in the judicial district in which the

processing for forfeiture is brought."  21 C.F.R. § 1316.75; see also 19 U.S.C.

§ 1607(a).  A person claiming the property may file a claim "not later than the deadline

set forth in a personal notice letter (which deadline may be not earlier than 35 days

after the date the letter is mailed), except that if that letter is not received, then a claim

may be filed not later than 30 days after the date of final publication of notice of

seizure."  18 U.S.C. § 983(a)(2)(B).  Upon receipt of a timely claim, the administrative

proceedings end and the government may (among other options) seek judicial

forfeiture by filing a complaint in United States district court.   See 19 U.S.C. § 1608;

18 U.S.C. § 983(a)(3)(A)-(C); 21 C.F.R. § 1316.76(b); 21 C.F.R. § 1316.78.  If no

---

[14]  See also United States v. Williams, 130 Fed. Appx. 301, 303 n.2 (11th Cir. 2005) ("Although 19 U.S.C. § 1607 facially applies only to customs seizures, the federal drug laws have incorporated § 1607's procedures for drug-related seizures.") (citing 21 U.S.C. § 881(d)).

[15]  See 18 U.S.C. § 983(a)(1)(A)(i)  (providing that, with specified exceptions, "in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."); 18 U.S.C. § 983(a)(1)(A)(iv) ("In a case in which the property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency"); 19 U.S.C. § 1607(a).

timely claim is filed, the government may declare the property forfeited.  <u>See</u> 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77.  The declaration of forfeiture has "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States."  19 U.S.C. § 1609(b).

CAFRA provides that a motion to set aside a declaration of forfeiture under 18 U.S.C. § 983(e) is the "exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."  18 U.S.C. § 983(e)(5); <u>see also</u> <u>Valderrama</u>, 417 F.3d at 1195.  Review "is limited to determining whether the agency followed the proper procedural safeguards." <u>Valderrama</u>, 417 F.3d at 1196.[16]  Under Section 983(e), a claimant is entitled to judicial relief if he received inadequate notice.  Section 983(e) provides:

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if-
>
> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

---

[16]  In limited circumstances a federal court may exercise equitable jurisdiction over a civil forfeiture decision.  <u>In re Matter of $67,470.00</u>, 901 F.2d 1540, 1544 (11th Cir. 1990).  "The decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint."  <u>In re Matter of $67,470.00</u>, 901 F.2d at 1544.  Although appropriately exercised to prevent a "manifest injustice," <u>United States v. Eubanks</u>, 169 F.3d 672, 674 (11th Cir. 1999), equitable jurisdiction should not be invoked "to review the merits of a forfeiture matter when the petitioner elected to forego the procedures for pursuing an adequate remedy at law."  <u>In re Matter of $67,470.00</u>, 901 F.2d at 1545.

"Thus, in cases subject to § 983(e), it is clear that the movant must show not only that the government knew or reasonably should have known of his interest in the property yet failed to take reasonable steps to notify him, but also that he did not know or have reason to know of the seizure within sufficient time to file a timely claim."  United States v. Russell, No. 2:04-cr-150-MHT, 2006 WL 2786883, *3 (M.D. Ala. Sept. 27, 2006) (movant who knew that property was seized from him at the time of his arrest entitled to no relief under Section 983(e)).  [17]  However, even if precluding a claim under CAFRA, notice of a seizure, without more, may be insufficient to satisfy constitutional due process.[18]  If a motion to set aside a declaration of forfeiture is granted, the declaration must be set aside "without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party."  18 U.S.C. § 983(e)(2).

Finally, CAFRA's notice requirements should be construed in light of the requirements of due process.[19]  Under the Due Process Clauses of the Fifth and

---

[17]  See also In re Sowell, No. 08-51163, 2009 WL 799570 (E.D. Mich. Mar. 19, 2009).

[18]  See Volpe v. United States, 543 F. Supp. 2d 113, 118-19 (D. Mass. 2008) ("Although Plaintiff does not have a remedy under CAFRA, 'district courts retain the authority to entertain constitutional challenges to administrative forfeitures.") (citing Gonzalez-Gonzalez v. United States, 257 F.3d 31, 35 (1st Cir. 2001) (involving a pre-CAFRA forfeiture)); Gonzalez-Gonzalez, 257 F.3d at 38. ("[T]he actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure."); United States v. Huggins, __ F. Supp. 2d __, No. 03-091, 2009 WL 890645 at  (D. Del. Apr. 2, 2009) ("[D]efendant's knowledge of seizure on the day of his arrest was not sufficient to afford him adequate due process."); Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005) ("[I]ndividuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard.").

[19]  See United States v. Ritchie, 342 F.3d 903, 910 (9th Cir. 2003) ("The statutory and regulatory guidelines for forfeitures are interpreted in light of constitutional due process concerns regarding notice of impending legal proceedings."); cf. Centeno v. United States, No. 05 Civ. 8794, 2006 WL 2382529, *4 (S.D.N.Y. Aug. 17, 2006) ("CAFRA's requirement that the Government need only take 'reasonable steps
(continued...)

Fourteenth Amendments, "individuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard." Valderrama, 417 F3d. at 1196 (citing Dusenbery v. United States, 534 U.S. 161, 167-68 (2002)). "Due process does not require that a property owner receive actual notice before the government may take his property." Jones v. Flowers, 547 U.S. 220, 226 (2006) (citing Dusenbery, 534 at 170). Rather, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Because "'[c]hance alone' brings a person's attention to 'an advertisement in small type inserted in the back pages of a newspaper,'" Jones v. Flowers, 547 U.S. at 237 (quoting Mullane, 339 U.S. at 315), "notice by publication is adequate only where 'it is not reasonably possible or practicable to give more adequate warning,'" Flowers, 547 U.S. at 237 (quoting Mullane, 339 U.S. at 317).[20] Generally, notice is sufficient if

---

[19](...continued)
to provide' notice mirrors the due process requirement that notice be 'reasonably calculated . . . to apprise a party of the pendency of the [forfeiture] action.'") (quoting Dusenbery v. United States, 534 U.S. 161, 170 (2002).

[20] See also Schroeder v. City of New York, 371 U.S. 208, 212-213 (1962) ("The general rule . . . is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable."); Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) ("Mullane held that notice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable.").

mailed to an address reasonably believed to be that of the intended recipient.[21]

However, if notice sent by certified mail is returned unclaimed, the government must

take "additional reasonable steps" if practicable to provide a property owner with

notice.  Flowers, 547 U.S. at 235 (addressing due process requirements of notice to

the owner of real property before a tax sale).  Such additional steps may include, for

example, re-sending a notice by regular mail or posting notice on a front door.

Flowers, 547 U.S. at 234-35; see also Flowers, 547 U.S. at 230 ("[W]hen a letter is

returned by the post office, the sender will ordinarily attempt to re-send it, if it is

practicable to do so.") (citing Small v. United States, 136 F.3d 1334, 1337 (D.C. Cir.

1998)).  If practicable, additional steps are required even if the certified mail was

reasonably calculated to provide actual notice.  Flowers, 547 U.S. at 238.  If no

reasonable additional steps are practicable, the government "cannot be faulted for

doing nothing."  Flowers, 547 U.S. at 234.

VanHorn is entitled to no relief under Section 983(e) because, even if for an

unknown reason VanHorn received no notice of the certified mail, VanHorn knew or

should have known of the seizure of the currency within sufficient time to file a timely

claim.  See United States v. Russell, No. 2:04-cr-150-MHT, 2006 WL 2786883, *3

(M.D. Ala. Sept. 27, 2006) (because a movant must show not only that the government

failed to take reasonable steps to notify him "but also that he did not know or have

---

[21]  See Dusenbery, 534 U.S. at 172 ("[T]he use of the mail addressed to petitioner at the penitentiary was clearly acceptable for much the same reason that [the Court] ha[s] approved mailed notice in the past."); Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.").

reason to know of the seizure within sufficient time to file a timely claim," a movant who knew that property was seized from him at the time of his arrest was entitled to no relief under Section 983(e)).  From the outset, VanHorn was aware of the DEA's participation in the November 10, 2004, events at his home.  Further, even if he never received the DEA Form 12 that (according to Special Agent McCaffrey's credible testimony) DEA Agents left at his trailer, VanHorn had actual knowledge on November 24, 2004, of the seizure of the currency by law enforcement officers.  In short, VanHorn's actual knowledge of the DEA's participation and actual knowledge of the seizure of the currency by law enforcement officers amount at a minimum to constructive knowledge of the DEA's seizure of the currency.[22]

Additionally, the DEA acted reasonably to notify VanHorn of the forfeiture proceeding.  The DEA sent a notice by certified mail, return receipt requested, to VanHorn's actual and only residence and complied with the statutory publication requirement.  When the certified mail was returned unclaimed, the DEA twice confirmed the unavailability of any other address for VanHorn and in addition confirmed VanHorn's release on bond.  Undoubtedly, other steps were available.  For instance, the DEA could have re-sent the notice to VanHorn's address by regular mail (as Flowers suggests) or attempted to identify and communicate with VanHorn's attorney in the state court criminal proceeding.  However, although the contours of Flowers remain uncertain, the United States persuasively argues that the "additional

---

[22]  Moreover, even assuming that VanHorn or his attorney did not obtain discovery noting the DEA's role in the search and seizure of the currency, VanHorn concedes that, some time on or before February 21, 2005, his attorney obtained discovery showing the DEA seizure of the currency.

steps" required by <u>Flowers</u> were greater in the circumstances of that case (which involved a tax sale without actual notice by a homeowner who lived elsewhere) than in an administrative forfeiture action in which a claimant knows or should know of a seizure of his property by the DEA and notice is sent by certified mail to the claimant's actual residence. In short, the DEA's attempts at notification of the forfeiture proceedings in the circumstances of this case comports with due process, and VanHorn is entitled to no relief under 18 U.S.C. § 983(e).

## CONCLUSION

VanHorn's motion to set aside (Doc. 9) is **DENIED**. The Clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on May 29, 2009.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE